**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CHERYL A. BERNIER,

       Plaintiff,                  Case Number: 08-14779

v.                                      JOHN CORBETT O'MEARA
                                          UNITED STATES DISTRICT COURT

MICHAEL ASTRUE, Commissioner of the
Social Security Administration,        VIRGINIA M. MORGAN
                                          UNITED STATES MAGISTRATE JUDGE

       Defendant.

_____ /

**REPORT AND RECOMMENDATION
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. No. 13) AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. No. 16)**

      Plaintiff, Cheryl A. Bernier, through her counsel, appeals the Social Security Commissioner's decision denying her disability insurance benefits and supplemental security income. This case comes before the court on the parties' cross-motions for summary judgment. For the reasons stated below, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that Plaintiff's motion for summary judgment be **DENIED**, and that Plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

**I. Background**

      On February 9, 2005, Plaintiff filed a second application for a period of disability, disability

insurance benefits, and supplemental security income. (Tr. 336, 340).[1]  Plaintiff claims that she has been disable since July 18, 2000 as a result of a combination of the following conditions: herniated lumbosacral disc, and bipolar depressive and anxiety disorders. (Tr. 20). Plaintiff also suffers from a congenital heart defect known as tetralogy of Fallot. (Tr. 39).

Plaintiff, who was 38 at the alleged disability onset, has a high school diploma and completed one year of college. (Tr. 351). In the past, Plaintiff worked as an automotive assembler, a lab associate, store manager, and plastics tester. (Tr. 352-355). Plaintiff stopped working in 2000 after suffering a nervous breakdown. (Tr. 372).

The Michigan state agency that makes disability determinations for the Social Security Administration initially denied plaintiff's application, concluding that Plaintiff's conditions were not sever enough to keep her from working. (Tr. 345). Plaintiff then filed a timely request for a hearing. (Tr. 52). Plaintiff appeared, without counsel, for an administrative hearing on January 7, 2008. (Tr. 349). Subsequently, on January 28, 2008, Administrative Law Judge Jerome B. Blum issued a decision affirming the denial of disability benefits. (Tr. 14).

ALJ Blum applied the five-step sequential analysis set out in the SSA's regulations to determine whether Plaintiff qualified for benefits. 20 C.F.R. § 404.1520(b)-(f). At step one, ALJ Blum found that Plaintiff has not engaged in substantial gainful activity since March 5, 2003, the date of the denial of her previous disability application. (Tr. 19). At steps two and three, ALJ Blum determined that Plaintiff had severe impairments but those impairments did not meet or medically equal the criteria of a listed impairment in Appendix 1 of Subpart P of Regulations 4. (Tr. 20-21).

---

[1]Plaintiff's earlier application for a period of disability and disability insurance benefits was denied on March 4, 2003. (Tr. 35).

Proceeding to step four, ALJ Blum concluded that Plaintiff has the residual functional capacity to perform "unskilled low stress nonindustrial sedentary service work with a sit/stand option and minimal lifting." (Tr. 21). At this step, the ALJ found that Plaintiff's testimony regarding her mental and physical disorders, most of which occurred in the past, was not supported by the medical record and the medical record did not corroborate a finding of a disabling impairment. (Tr. 21-22). The ALJ also found that Plaintiff was not capable of performing any past relevant work, thus shifting the burden to the Commissioner to prove that Plaintiff is capable of performing other work. (Tr. 22). ALJ Blum concluded, at step five, that Plaintiff was capable of performing other work and, thus, not disabled. (Tr. 22-23).

Plaintiff filed an untimely request for review with the Social Security Appeals Council. (Tr. 9). The Appeals Council found that Plaintiff had a good reason for her untimely request for review but denied Plaintiff's request on September 16, 2008. (Tr. 5).

On November 13, 2008, Plaintiff initiated this civil action for judicial review of the denial of benefits. (Doc. No. 2). That same day, the Honorable John Corbett O'Meara referred this case to this court for determination of all non-dispositive motions and issuance of a Report and Recommendation. (Doc. No. 3).

## II. Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. *Brainard v. Secretary of HHS*, 889 F.2d 679, 681 (6th Cir. 1989); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in *Brainard*, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." "[The] decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key*, 109 F.3d at 273.

## III. Analysis

Plaintiff first argues that the ALJ erred by failing to inform her that she has the right to be represented by counsel at the hearing. (Pl.'s Mot. 13). The Commissioner responds that Plaintiff was aware of her right to be represented based on her education, prior application and administrative hearing where Plaintiff was represented by counsel, and the notices sent to Plaintiff that included a statement regarding her right to counsel, and Plaintiff knowingly waived her right to counsel. (Def.'s Mot. 11).

A claimant has a statutory right to counsel at a disability hearing. 42 U.S.C. § 406, 20 C.F.R. 404.1700l; *see also*, *Kelly v. Apfel*, 166 F.3d 1214 (6th Cir. 1998) (table). Plaintiff relies on a case from the United States Appeals Court for the Seventh Circuit for her argument that the ALJ was required to explain her right to counsel to her at the administrative hearing. The Seventh Circuit has held that a claimant may not validly waive his or her right to counsel unless the ALJ explains to the pro se claimant: (1) the manner in which an attorney can aid in the proceedings, (2) the

4

possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees. *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir.1991). The Fifth and Eleventh Circuits have adopted similar disclosure requirements. *Edwards v. Sullivan*, 937 F.2d 580 (11th Cir.1991); *Clark v. Schweiker*, 652 F.2d 399 (5th Cir. Unit B 1981). The Sixth Circuit, however, has not adopted such disclosure requirements. Rather, in cases where claimants are unrepresented, the Sixth Circuit examines whether the claimant was apprised or aware of his or her right to counsel and chose to proceed without representation. *See e.g.*, *Allison v. Apfel*, 229 F.3d 1150 (6th Cir. 2000) (table).

In this case, Defendant notified Plaintiff of her right to counsel in writing prior to the administrative hearing. (Tr. 26, 33, 50). It is evident that Plaintiff knew that she was entitled to representation at the hearing because Plaintiff, in requesting an administrative hearing, wrote that she did not have a representative yet. (Tr. 52). Also, Plaintiff was represented by counsel at a previous administrative hearing held in connection with her first application for disability benefits. (Tr. 38). In addition, Plaintiff's education level and lack of a cognitive disability also supports the conclusion that Plaintiff knew that she was entitled to representation and chose to proceed without representation. Accordingly, the court concludes that Plaintiff knew that she could be represented by counsel and chose to proceed *pro se*. Plaintiff knowingly waived her right to counsel.

Next, Plaintiff argues that the ALJ did not fully and fairly develop the record. (Pl.'s Mot. 14). The administrative law judge has a special duty to ensure that the record is fully and fairly developed when the claimant is not represented by counsel. *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir.1986). Plaintiff asserts that the ALJ breached his special duty to fully and fairly develop the record by failing to obtain current medical records or a consultative

exam and interrupting Plaintiff's testimony. (Pl.'s Mot. 15).

The court's review of the record shows that the ALJ fulfilled his special duty to fully and fairly develop the record. The ALJ questioned Plaintiff extensively about her various medical conditions. (Tr. 355-370). Also, the ALJ inquired about Plaintiff's ability to perform everyday tasks such as driving, shopping, cooking, and cleaning. (Tr. 371-375). Further, the ALJ specifically asked Plaintiff whether the medical records she brought to the hearing were the most current records, from 2006 and 2007, and Plaintiff replied that they were. (Tr. 383). By asking about her medical records, the ALJ ensured that he had the most recent and relevant medical evidence available to evaluate Plaintiff's disability status. In addition, the record is devoid of evidence suggesting that a consultative medical exam was necessary or warranted to fully and fairly develop the record, nor does Plaintiff adequately explain, on appeal, why such an exam should have been obtained.

In addition, it is not apparent that the ALJ's interruptions of Plaintiff's testimony inhibited the development of the record. Plaintiff claims that the ALJ's interruptions intimidated Plaintiff and "had a chilling effect on Plaintiff's questioning" of the vocational expert. (Pl.'s Mot. 15-16). The record reveals that the ALJ interrupted Plaintiff when she stated that she would not know where to find any of the jobs the vocational expert suggested she was capable of performing. (Tr. 389-390). The ALJ then interjected to explain that the vocational expert's job was to evaluate what jobs Plaintiff is capable of, not find her a job. (Tr. 389-390). After his explanation, the ALJ asked Plaintiff if she had any further questions; Plaintiff replied that she did not. (Tr. 390). Plaintiff's so-called line of questioning was not relevant to determining whether or not she was capable of working. Thus, the ALJ properly interjected to offer an explanation when it was clear that Plaintiff did not understand the vocational expert's role in the hearing; it appears that the ALJ was assisting

6

Plaintiff, not intimidating her.

Plaintiff has not shown that the ALJ did not perform his special duty to fully and fairly develop the record. In fact, the record shows that the ALJ, through his questioning of Plaintiff and the explanations he offered to Plaintiff about the process, ensured that the record was fully and fairly developed.

Plaintiff also argues that the ALJ's finding that Plaintiff could perform restricted sedentary work is not supported by substantial evidence. (Pl.'s Mot. 16). Plaintiff contends that her chronic mental illness alone was disabling, as evidence by her GAF scores and her physicians' opinions, and the ALJ ignored two of her GAF scores and her treating physicians' opinions that she is disabled due to mental illness. (Pl.'s Mot. 17-19). Further, Plaintiff claims that her physical ailments also support a finding of disability, alone or in combination with her mental illness, and argues that the ALJ discounted her treating physician's opinion. (Pl.'s Mot. 20).

The Commissioner responds that the ALJ did not rely solely on one Plaintiff's GAF score to assess Plaintiff's mental condition; the ALJ mentioned Plaintiff's GAF score of 59 but also relied on the medical evidence in the record. (Def.'s Mot. 13). The Commissioner also disputes Plaintiff's assertion that her treating physicians concluded that her psychiatric impairment was disabling. (Def.'s Mot. 14). The Commissioner asserts that there is no treating physician opinion stating that Plaintiff was disabled due to her psychological condition. (Def.'s Mot. 14). Also, the Commissioner argues that the ALJ's failure to discuss Dr. Zahurullah's opinion is harmless error because Dr. Zahurullah offered opinions outside of his expertise and his report contains factual errors related to Plaintiff's education level and work history. (Def.'s Mot. 15). The Commissioner states that Dr. Allis' report should not be considered because it was completed before March 5,

7

2003, which is outside the relevant time period in this case.  (Def.'s Mot. 15).

> With respect to Plaintiff's mental condition, the ALJ made the following findings:
>
> Her bipolar condition is aggravated by trauma in her life, but she has adequate contact with reality, and her memory and cognition are not highly impaired.  She is not actively suicidal or psychotic, and she responds to treatment.  The most recent GAF score of 59 reflects only moderate symptoms.  The claimant has a few friends, and she can prepare meals, do housework, go shopping, and care for her pets (Exhibits B-3F, B-5F, B-7F, B-8F).  Hence, there is just a mild restriction of activities of daily living, and moderate difficulties in maintaining social functioning, concentration, persistence, or pace.

(Tr. 21).

In assessing Plaintiff's psychological condition, the ALJ cited Plaintiff's medical records from a 2003 hospitalization for depression with suicidal ideas and noted that Plaintiff made a fast recovery.  (Tr. 20).  The ALJ also relied on a February 2004 psychiatric evaluation, performed by her treating psychiatrist, Dr. Zahurullah, in which Dr. Zahurullah concluded that Plaintiff's global assessment of functioning (GAF) was 45 and he recommended that Plaintiff continue to take her medicine and return to the clinic in a month.  (Tr. 255-58).  In addition, the ALJ cited a June 2005 consultative psychiatric examination, in which the doctor concluded that Plaintiff had bipolar disorder, an anxiety disorder and a GAF score of 59.  (Tr. 20, 261).  The ALJ, therefore, considered the medical records and opinions from Dr. Zahurullah, Plaintiff's treating psychiatrist, in addition to other medical records related to Plaintiff's mental condition.

In support of her argument that the ALJ did not consider her treating physicians' opinions, Plaintiff cites Dr. Zahurullah's opinion from March 2004 that Plaintiff "does not appear to be able to function in any work setting because of physical and mental limitations" as evidence that she is disabled due to her mental illness.  (Pl.'s Mot. 18).  Plaintiff also relies on an opinion from Dr. Allis in February 2003.  (Tr. 224-25).  Dr. Zahurullah's March 2004 does not state that Plaintiff is unable

8

to work due to her mental limitation, as Plaintiff argues. Thus, the ALJ did not reject Dr. Zahurullah's opinion without explanation; Dr. Zahuruallah did not opine that Plaintiff was disable based solely on her psychological state. Moreover, the ALJ was not required to consider Dr. Allis' opinion because Dr. Allis report is from February 2003; Plaintiff is barred, by res judicata, from asserting claims based on her condition before March 2003.

In sum, this court concludes that the ALJ properly reviewed and considered the evidence related to Plaintiff's mental condition. The record contains substantial evidence to support the ALJ's conclusion that Plaintiff is not disabled due to her psychological impairments. Remand is not, therefore, warranted on this ground.

Plaintiff also contends that her "plethora of medically well documented physical complaint [sic] also supports a finding of disability alone [or] in combination." (Pl.'s Mot. 20). Plaintiff complains that the ALJ relied on a state agency examiner's assessment, rather than a medical doctor's, and again ignored Plaintiff's treating physician's assessment. (Pl.'s Mot. 20). The Commissioner contends that the ALJ did not rely on the state agency examiner's opinion and the ALJ properly considered the most recent opinion from Plaintiff's treating physician regarding her physical condition. (Def.'s Mot. 16).

With respect to Plaintiff's physical impairments, the ALJ made the following findings:

> Moreover, the claimant's herniated disc was described as small, and 2 EMGs failed to uncover evidence of radiculopathy or nerve damage (Exhibits B-6F, B-12F). She has tenderness, limited movement, and spasm in her low back with an antalgic gait, but Dr. Ross' examination would not prohibit sedentary work (Exhibit B-9F). The residual functional capacity assessment notes that she is stable with physical restrictions that approximate the sedentary level (Exhibit B-16F). The file also contains references to hepatitis, gallstones, lymphadenopathy, and a congenital heart defect, but the findings do not establish these problems as being disabling in severity. (Exhibits B-13F through B-18F).

9

(Tr. 21).

In assessing Plaintiff's physical condition, the ALJ relied on Plaintiff's medical records related to her heart condition and her herniated disc. (Tr. 20). Also, the ALJ cited the opinions of Dr. Ross, a consultative physician, Dr. Thandra, Plaintiff's treating physician, and Dr. Samuel, a neurologist who treated Plaintiff. (Tr. 20, 21). In addition, the ALJ noted that based on a residual functional capacity assessment performed by Dr. Thandra in 2006, Plaintiff could lift less than ten pounds, sit for six hours and stand/walk for two hours in an eight hour work day. (Tr. 20).

Plaintiff states that the ALJ looked to the state agency's examiner's residual functional capacity assessment. There is no citation to the state agency's examiner's residual functional capacity assessment in the ALJ's opinion. (Tr. 20-21). The only residual functional capacity assessment the ALJ references is the one performed by Plaintiff's treating physician, Dr. Thandra. (Tr. 20-21). Moreover, even if the ALJ had relied on the state agency's examiner's residual functional capacity assessment, it would not be an error because the ALJ clearly also considered the opinions of Plaintiff's treating physicians and the medical records she provided. (Tr. 20-21). Thus, Plaintiff is not entitled to reversal of the ALJ's opinion on this ground.

Plaintiff's last argument on appeal is that the hypothetical the ALJ posed to the vocational expert was incomplete because it did not include all of her impairments. (Pl.'s Mot. 21). Plaintiff contends that the ALJ should have included the following impairments in the hypothetical: "abdominal, back and leg, hand pain complaints, headaches, fatigue, need to use a cane, need to lie down, breathing restrictions, postural difficulties and inability to use her hands and legs." (Pl.'s Mot. 24). The Commissioner responds that the hypothetical posed to the vocational expert was adequate and proper because it included all of Plaintiff's substantiated impairments and resultant

10

limitations. (Def.'s Mot. 18).

In deciding whether the claimant has the residual functional capacity to perform any other substantial gainful activity, the ALJ may rely on the testimony of a vocational expert in response to a hypothetical question. *See Varley v. Secretary of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir.1987). The hypothetical question, however, must accurately describe the claimant's physical and mental impairments. *See id.*

In this case, the ALJ posed a series of hypothetical questions to the vocational expert regarding Plaintiff's ability to work. First, the ALJ asked the vocational expert whether, assuming Plaintiff has a problem standing, she could perform sedentary work that requires no lifting of more than a pound or two. (Tr. 385). The vocational expert testified that Plaintiff could perform unskilled sedentary work such as a gate tender, badge checker, information clerk and security monitor. (Tr. 386). The ALJ then asked the vocational expert for more specifics on the jobs named, and the vocational expert confirmed that any of the above cited jobs would be full-time work that requires sitting with some flexibility to stand and no lifting of over a pound. (Tr. 386). The vocational expert also testified that these jobs are low stress. (Tr. 387).

The hypothetical questions the ALJ asked the vocational expert adequately incorporate Plaintiff's physical and mental limitations. Plaintiff has back and leg pain but her physician, Dr. Thandra, reported that Plaintiff could sit for six hours in an eight-hour work day and stand and/or walk at least two hours in an eight-hour work day. (Tr. 297). Further, Dr. Thandra opined the Plaintiff could lift less than ten pounds occasionally during the work day, and could use her hands and arms for repetitive actions such as simple grasping and reaching. (Tr. 297, 299). As recounted above, the ALJ incorporated these limitations into the hypothetical– a job where Plaintiff could sit

11

and lift no more than one or two pounds. Further, the ALJ incorporate Plaintiff's mental limitations into the hypothetical. As Plaintiff testified at the hearing, she "cannot deal with conflict anymore." (Tr. 388). Accordingly, the ALJ asked the vocational expert whether the proposed jobs were low stress. Reviewing the hypothetical questions posed to the vocational expert in the context of Plaintiff's testimony and the opinion of her treating physician of her physical and mental limitations shows that the ALJ accurately described the claimant's physical and mental impairments. *See Varley*, 820 F.2d at 779. Plaintiff, therefore, is not entitled to relief on this ground.

## V. Conclusion

For the reasons stated above, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that Plaintiff's motion for summary judgment be **DENIED**, and that Plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion

and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                                S/Virginia M. Morgan
                                                Virginia M. Morgan
                                                United States Magistrate Judge

Dated: November 18, 2009

---

### PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on November 18, 2009.

                                                s/Jane Johnson
                                                Case Manager to
                                                Magistrate Judge Virginia M. Morgan